1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WAYNE CARROL JONES, | CASE NO. 3:24-cv-05322-DGE |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART JUDGMENT ON THE PLEADINGS (DKT. NO. 34) |
| v. | |
| WASHINGTON DEPARTMENT OF EMPLOYMENT SECURITY et al., | |
| Defendant. | |

This case comes before the Court on Defendant's motion for judgment on the pleadings (Dkt. No. 34).  For the reasons discussed herein, Defendant's motion is GRANTED in part and DENIED in part.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## I     BACKGROUND

This case arises out of Plaintiff's termination from the Washington Department of Employment Security ("Department").[1]  Plaintiff worked for the Department from May 2020 until his termination on July 21, 2023.  (Dkt. No. 23 at 2–3.)  Plaintiff worked for the Department in a variety of roles including as an Unemployment Specialist 2 through 4 and a Paid Leave Specialist 1 and 2.  (*Id*.)

Plaintiff's troubles with the Department began when he first asked for accommodations on August 3, 2022 to address a "visual impairment" that "substantially limits [Plaintiff's] ability to read handwritten and poorly scanned documents."  (*Id*. at 2.)  The Department failed to inform Plaintiff of the "full range of available accommodations for visually impaired employees."  (*Id*.) The Department also failed to "consult an accommodation specialist or conduct an individualized assessment of Plaintiff's specific needs."  (*Id*.)  Instead, the Department gave Plaintiff "an 'Amazon list' of equipment without explaining whether these tools were effective for Plaintiff's job duties."  (*Id*. at 3.)  Plaintiff selected ZoomText software from the Department's list.  (*Id*.) The Department failed to provide Plaintiff with any ZoomText training.  (*Id*.)  Plaintiff was not able to use ZoomText to assist him with an "essential" part of his job: "reading handwritten or poorly scanned documents."  (*Id*.)  The Department denied requests from Plaintiff to receive "additional accommodations and training" as well as a request to "transfer to a different team where he would receive better support."  (*Id*.)

Plaintiff's troubles escalated after the death of his father on January 9, 2023.  (*Id*.) Plaintiff requested FMLA leave from January 10, 2023 until April 2023 to "handle funeral

---

[1] All facts will be taken from Plaintiff's complaint and assumed to be true for purposes of considering Defendant's motion.  The Court will not take judicial notice of any facts at this time. (*See* Dkt. No. 35 at 3.)

arrangements and personal recovery." (*Id*.)  The Department required Plaintiff "complete work-related tasks, such as submitting timecard updates" during this period.  (*Id*.)  On May 12, 2023, Plaintiff returned to work.  (*Id*.)  Upon his return, Plaintiff was subjected to "immediate retaliation" in the form of being "denied training for new job duties," "assigned to unfamiliar work tasks without guidance," having his "previously approved flexible work schedule" revoked, and ultimately being terminated.  (*Id*.)  Plaintiff also asserts misconduct has continued after his termination, with his appeal being "obstructed" due to "[i]ncorrect contact names provided in his separation letter" and "[a] deliberate delay in processing his appeal."  (*Id*.)  Plaintiff also alleges continued "discriminatory hiring practices against individuals with disabilities" by the Department.  (*Id*.)

Plaintiff seeks injunctive relief in the form of (1) Plaintiff's reinstatement "to his former position or a comparable role" with the Department," (2) mandatory "ADA, FMLA, and fair hiring training for all supervisors and HR personnel" with the Department, and (3) court monitoring of the Department's "compliance with ADA and FMLA requirements for a reasonable period of time."  (*Id*. at 4.)  The Department has moved for judgment on the pleadings alleging Plaintiff failed to show sufficient facts asserting "his separation from [the Department] was related to his use of leave" or "he was not reasonably accommodated or discriminated against on the basis of his disability."  (Dkt. No. 34 at 1.)  Defendant's motion is fully briefed. (*See* Dkt. Nos. 35, 41.)[2]

## II    DISCUSSION

### A.  Legal Framework

---

[2] Plaintiff moved to strike certain portions of the Department's reply.  (Dkt. No. 42.)  Plaintiff's motion is discussed in Part II.B, *infra*.

1    "After the pleadings are closed—but early enough not to delay trial—a party may move

2    for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly

3    granted when there is no issue of material fact in dispute, and the moving party is entitled to

4    judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Analysis

5    under Federal Rule of Civil Procedure 12(c), like analysis under Federal Rule of Civil Procedure

6    12(b), requires "a court [to] determine whether the facts alleged in the complaint, taken as true,

7    entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.

8    2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. C 10-04341 CRB, 2011 WL 6140912, at *3

9    (N.D. Cal. Dec. 9, 2011)) (internal quotation marks omitted).

10    **B. Plaintiff's Motion to Strike**

11        On October 3, 2025, Plaintiff moved to strike several portions of the Department's reply,

12    including their challenge to his claim of disability under the ADA, their reference to the

13    children's book *If You Give a Mouse a Cookie*, and their reference to AI hallucinations. (Dkt.

14    No. 42 at 1–2.) While the Court declines to strike any of Defendant's reply as 'redundant,

15    immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), the Court can understand some of

16    Plaintiff's frustrations with the Department's language. For example, if the Department's

17    reference to a children's book is meant to question the decision granting Plaintiff leave to amend

18    his complaint, the Court would remind the Department that complaints by pro se plaintiffs are to

19    be liberally construed and, if dismissed, leave to amend should be granted unless "absolutely

20    clear" amendment is futile. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citations

21    omitted).

22        While Plaintiff has certain misconceptions about the law as noted throughout this order

23    and will ultimately be held to the same legal standards as any other plaintiff, the Department is

24

1    reminded of the importance of counsel—especially counsel representing the state and

2    specifically its Department of Employment Security—being mindful of tone when advocating

3    their client's position.

4    **C.   Analysis**

5         **1.   Plaintiff asserts a plausible claim under Title 1 of the ADA for failure to**

6              **accommodate.**

7         Plaintiff's complaint broadly speaking identifies two federal statutes—the Americans

8    with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA)—he alleges the

9    Department violated.  While Plaintiff does not identify specific provisions of the ADA

10   Defendants violated, his claim appears to allege a "failure to accommodate" claim under Title 1

11   of the ADA.  In such claims a plaintiff is "required to establish (1) that [the plaintiff] was

12   disabled under the ADA; (2) that [the plaintiff] was a qualified individual with a disability; and

13   (3) that [the plaintiff] was discriminated against by [the plaintiff's] employer because of that

14   disability."  *Dunlap v. Liberty Nat. Prod., Inc.*, 878 F.3d 794, 798–799 (9th Cir. 2017).

15        Plaintiff states a plausible claim of disability under the ADA.  An individual is disabled

16   under the ADA if one has a "physical or mental impairment that substantially limits one or more

17   of the major life activities of the individual."  42 U.S.C. § 12102(1)(A).  Plaintiff identifies

18   himself as having a "visual impairment" that "substantially limits his ability to read handwritten

19   and poorly scanned documents."  (Dkt. No. 23 at 2.)[3]  While visual impairments are not *per se*

20   ADA disabilities, they can be the basis of an ADA claim.  *See EEOC v. United Parcel Serv.,*

21   *Inc.*, 306 F.3d 794, 802–803 (9th Cir. 2002) (finding a monocular individual was not disabled

22

23   ───────────────
     [3] Plaintiff provides additional information about his disability in his response.  (Dkt. No. 35 at 2.)

24   However, only information contained in his complaint can be used for purposes of a judgment on
     the pleadings.

under the ADA, but recognizing a disability could exist where an impairment "prevent[s] or severely restrict[s] use of [] eyesight compared with how unimpaired individuals normally use their eyesight in daily life"); *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) (finding visually impaired individuals stated a successful ADA claim); *Floyd v. Insight Global LLC*, No. 23-cv-1680-BJR, 2024 WL 2133370, at *7 (W.D. Wash. May 10, 2024) (citing a Sixth Circuit case recognizing a "visually impaired" plaintiff alleged a plausible ADA violation); *Atkinson v. Aaron's LLC*, 733 F. Supp. 3d 1056, 1070 (W.D. Wash. 2014) (same).  Moreover, reading constitutes a major life activity.  42 U.S.C. § 12102(2)(A); *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1067 (9th Cir. 2005).  Plaintiff alleges substantial limitations in his ability to read "handwritten or poorly scanned documents."  (Dkt. No. 23 at 2.)

Plaintiff also states a plausible claim of being a qualified individual.  A qualified individual is an individual who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  *Dunlap*, 878 F.3d at 799 (quoting *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013)).  Plaintiff asserts he was promoted to the "Paid Leave Specialist 2" role after "completing an in-training period."  (Dkt. No. 23 at 2.)  Plaintiff's success during this in-training period is sufficient to show he could plausibly perform the job's essential functions.

Finally, Plaintiff states a plausible claim he was discriminated against by the Department.  Discrimination under the ADA includes "an employer's failure to make [a] reasonable accommodation."  *Dunlap*, 878 F.3d at 799 (citing *Mendoza v. The Roman Catholic Archbishop of Los Angeles*, 824 F.3d 1148, 1150 (9th Cir. 2016)).  The duty to provide reasonable accommodations is a continuing duty and employers must re-engage with the plaintiff if an initial accommodation effort is unsuccessful.  *Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d

1128, 1138 (9th Cir. 2001). Here, Plaintiff received one accommodation, ZoomText, which "was ineffective." (Dkt. No. 23 at 3.) Plaintiff asserts the Department then denied all other requests for accommodations and trainings. (*Id*.) Accordingly, Plaintiff states a facially plausible claim for failure to accommodate under the ADA.

### 2. Plaintiff asserts a plausible claim for retaliation under the ADA.

A retaliation claim under the ADA requires the plaintiff to show "(1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two." *Coons v. Sec'y of United States Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003)). Plaintiff cites his request for a reasonable accommodation as involvement in a protected activity. (Dkt. No. 23 at 2.) Plaintiff alleges three potential adverse employment actions: first, being denied a transfer; second, being terminated; and third, having his appeal process obstructed. (*Id*. at 3.) Because the denied transfer happened concurrently with Plaintiff's dispute about reasonable accommodations, and the termination and allegedly obstructed appeals process happened less than a year later, proximity is sufficient for Plaintiff to survive judgment on the pleadings. *See Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 850 (9th Cir. 2004) (finding retaliatory intent can be "inferred" from temporal proximity); *see also Kersey v. Costco Wholesale Corp.*, 210 Fed. App'x 561, 562 (9th Cir. 2006) (citing only cases with gaps over a year as lacking temporal proximity). Accordingly, Plaintiff states a facially plausible claim for retaliation under the ADA.

### 3. Plaintiff asserts a plausible claim for retaliation under the FMLA.

A plaintiff bringing a retaliation claim under the FMLA must "establish: (1) he engaged in protected activity under the FMLA; (2) he suffered some adverse employment action by the employer following the protected activity; and (3) the adverse employment action was causally

1    linked to the protected activity." *Hazelett v. Wal-Mart Stores, Inc.*, 829 Fed. App'x 197, 202

2    (9th Cir. 2020) (quoting *Browett v. City of Reno*, 237 F. Supp. 3d 1040, 1046 (D. Nev. 2017)

3    (internal edits omitted).  Proximity can be a factor for showing a causal link.  *See, e.g.*, *Xin Liu v.*

4    *Amway Corp.*, 347 F.3d 1125, 1137 (9th Cir. 2003); *Mendel v. S. Mono Healthcare Dist.*, No.

5    2:19-cv-00216-TLN-JDP, 2022 WL 4237724, at *5 (E.D. Cal. Sept. 14, 2022); *Schultz v. Wells*

6    *Fargo Bank, Nat. Ass'n*, 970 F. Supp. 2d 1039, 1054 (D. Or. Sept. 5, 2013).  Because Plaintiff

7    alleges protected activity in the form of taking FMLA leave followed by his termination

8    approximately six months after his request and less than three months after his return to work,

9    Plaintiff states a plausible claim for retaliation under the FMLA.[4]

10              **4.  Plaintiff fails to state a cognizable claim for interference under the**

11                   **FMLA.**

12              A FMLA interference claim requires the plaintiff show "(1) he was eligible for the

13    FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave

14    under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his

15    employer denied him FMLA benefits to which he was entitled."  *Crawford v. JP Morgan Chase*,

16    983 F. Supp. 2d 1264, 1270 (W.D. Wash. 2013) (quoting *Sanders v. City of Newport*, 657 F.3d

17    772, 778 (9th Cir. 2011)).

18              Plaintiff's claim fails because the only interference he identified during his FMLA leave

19    was being required to "submit[] timecard updates."  (Dkt. No. 23 at 3.)  Employers are allowed

20    to engage in de minimis contacts with employees on FMLA leave.  *See, e.g.*, *Kelley v. Jewish*

21    *Voice Ministries Int'l*, No.  CV-23-00353-PHX-SPL, 2024 WL 4416978, at *5 (D. Ariz. Oct. 4,

22

23    ────────────────────
       [4] It is not entirely clear whether Plaintiff qualified for FMLA leave.  Because he appears to have
       been granted FMLA leave, however, the Court will presume at this stage Plaintiff was eligible
24    for FMLA leave.

2024): *Graves v. DJO, LLC*, No. 20-CV-1103 W (KSC), 2023 WL 3565077, at *14 (S.D. Cal. Mar. 30, 2023); *Michelucci v. Cnty. of Napa*, No. 18-cv-05144-HSG, 2019 WL 1995332, at *6 (N.D. Cal. May 6, 2019).  Because Plaintiff asserts only the de minimis conduct of submitting timesheets in his complaint, Defendant's motion for judgment on the pleadings for FMLA interference is GRANTED.[5]  Plaintiff's FMLA interference claim is dismissed.

### III    ORDER

Accordingly, and having considered Defendant's motion for judgment on the pleadings (Dkt. No. 34), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendant's motion for judgment on the pleadings is GRANTED in part and DENIED in part.  Defendant's motion for judgment on the pleadings is granted for Plaintiff's FMLA interference claim and denied for Plaintiff's ADA failure to accommodate, ADA retaliation, and FMLA retaliation claim.  Plaintiff's FMLA interference claim is dismissed.[6]

Dated this 12th day of November, 2025.

---

[5] Plaintiff argues Defendant's framing of their requirements for him during his FMLA leave as "de minimis" constitutes "extra-pleading characterizations." (Dkt. No. 35 at 1.)  However, the Department's characterization of timesheets and other similar tasks as being de minimis is supported by case law and not outside the scope of a judgment on the pleadings.  Accordingly, no "conversion" or Rule 56(d) discovery is necessary. (*See id*. at 5–6.)

[6] Plaintiff has expressed a desire to either add or substitute "the Commissioner in her official capacity." (Dkt. No. 35 at 1.)  While Plaintiff may be able to sue the Commissioner in her official capacity for injunctive relief, *see Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1188 (9th Cir. 2003) (allowing Title II ADA suits against state officials in their official capacities), this change would have no impact on the injunctive relief available to Plaintiff.  Accordingly, a motion to substitute the Commissioner as defendant will be denied.

Plaintiff also identifies an alternative request to add a Rehabilitation Act § 504 claim in the event the Court were to dismiss his ADA claim on immunity grounds. (*See* Dkt. No. 35 at 5–6.)  As this did not occur, the Court considers this request moot absent further request from Plaintiff.

1

2

David G. Estudillo
United States District Judge

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24